**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 24-cr-206 (TNM)** |
| **v.** | : | |
| | : | |
| **SCOTT ALAN O'BRIEN,** | : | |
| | : | |
| **Defendant** | : | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Scott Alan O'Brien has entered an agreement to plead guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and a violation of 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Two). For the reasons set forth herein, the government requests that this Court, following acceptance of O'Brien's guilty plea, sentence O'Brien to 14 days' imprisonment and 36 months' probation. The government also requests that this Court impose 60 hours of community service and, consistent with the plea agreement in this case, $500 in restitution.

## I. Introduction

Defendant O'Brien, a 34-year-old mechanic and car dealer from Ponder, Texas, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that interrupted Congress's certification of the 2020 Electoral College vote count, threatened the

peaceful transfer of Presidential power, injured more than one hundred police officers, and resulted in more than $2.9 million in losses.[1]

O'Brien entered into a pre-arrest plea agreement with the government and has agreed to plead guilty to violations of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building). The government's recommendation is warranted because O'Brien: (1) added to the mayhem on the West Front of the Capitol by climbing atop a media tower during the riot; (2) entered into the Capitol despite all the indicia, including a blaring alarm, that he was not authorized to do so; and (3) joined with other rioters as they paraded in the Rotunda chanting "Whose House, Our House."

The Court must also consider that O'Brien's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. The Court should also consider that O'Brien agreed to a pre-charge resolution and thereby accepted responsibility for his conduct without having been charged with crimes and arrested. Here, the facts and circumstances of

---

[1] As of July 7, 2023, the approximate loss suffered as a result of the siege at the United States Capitol was $2,923,080. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

O'Brien's crime support a sentence of 14 days' imprisonment, 36 months' probation, 60 hours of community service, and $500 in restitution.

## II.     Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol set forth in the Statement of Offense, which the parties have submitted to the Court and anticipate will be entered on the docket in connection with O'Brien's guilty plea.

### *Defendant O'Brien's Role in the January 6, 2021 Attack on the Capitol*

O'Brien traveled from Ponder, Texas to Washington, D.C. to attend the "Stop the Steal" rally. Following the rally, he marched with other protestors toward the West Front of the U.S. Capitol, where police officers were faced with a rapidly growing number of rioters in the restricted area. Rioters attacked police officers with fists, sticks, makeshift projectiles, pepper spray, and a wide assortment of weaponry brought by members of the crowd or seized from the inaugural stage construction site.



*Image 1 (Screenshot from CCTV footage showing MPD officers in a defensive line at the top of the West Plaza stairs as of 1:39 pm.)*

O'Brien approached the media tower that had been set up on the West Front of the Capitol Building for the upcoming inauguration, which is shown in the center of Image 1, above. Rioters had overtaken the media tower. In doing so, they added to the mayhem and disorder unfolding at the West Front of the Capitol by demonstrating that they, not the police, were in control.



*Image 2 (Still image from a video recorded by O'Brien of rioters on the media tower)*

At approximately 1:54 p.m., O'Brien scaled the media tower and joined the other rioters there. From his vantage point atop the tower, O'Brien had a clear view of the police line below him and the rioters that were attacking the police.



*Image 3 (Still image from a video recorded by O'Brien from the media tower)*

While he was at the West Front, including when he was on the media tower, O'Brien observed rioters fighting with police officers. O'Brien also observed police officers using flash bangs, pepper spray and other means to try to prevent the rioters from advancing.

After having actively defended their line for over an hour, the hundreds of officers at the front of the inauguration stage were flanked, outnumbered, and under continuous assault from the thousands of rioters directly in front of them as well as members of the mob who had climbed up onto scaffolding above and to the side of them, many of whom were hurling projectiles. The rioters

eventually overran the police line on the West Front, and some of the rioters, including O'Brien, advanced toward the Capitol.

At approximately 2:44 p.m., O'Brien entered the Capitol through a location known as the Upper West Terrace Door. A loud alarm was sounding as he entered through the doorway.



*Image 4 (O'Brien, circled in red, entering the Capitol as captured by surveillance video)*

After entering the Capitol, O'Brien continued into the Rotunda. He joined rioters, including rioters wearing tactical gear and bullet proof chest plates, who were chanting "Whose House?", "Our House!" O'Brien used his cell phone to take photographs and videos of, among other things, rioters standing on top of statues inside the Rotunda.



*Image 5 (O'Brien, circled in red, filming fellow rioters in the Rotunda)*

O'Brien moved into the Rotunda Lobby. At approximately 2:51 p.m., O'Brien exited the Capitol Building through the East Rotunda Doors after having been inside the Capitol for approximately seven minutes.

As set forth in the Statement of Offense, O'Brien acknowledges that he willfully and knowingly engaged in disruptive conduct in the Capitol Building, and paraded in the Capitol Building, with the intent to disrupt the orderly conduct of a session of Congress.

*Defendant O'Brien's FBI Interview*

At the FBI's request, O'Brien agreed to a voluntary interview, which was held on September 25, 2023. O'Brien was represented by counsel.[2] During the interview, O'Brien, in sum

---

[2] The interview was conducted pursuant to a proffer agreement executed by O'Brien and the U.S. Attorney's Office.

and substance, acknowledged the conduct described above, and he positively identified himself in a video showing himself inside the Capitol during the riot.

O'Brien also voluntarily provided the FBI with photographs and videos that he had made on January 6, 2021, including videos described above.

*The Charges and Plea Agreement*

On or about April 2, 2024, the United States and O'Brien entered into a plea agreement by which O'Brien agreed to plead guilty to a two-count Information charging him with violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G). By the plea agreement, O'Brien also agreed to pay $500 in restitution to the Architect of the Capitol.

## III.    Statutory Penalties

If the Court accepts O'Brien's guilty plea, O'Brien will face sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreement, he faces up to six months of imprisonment and a fine of up to $5,000 on each count. Further, as noted by the plea agreement, the Court could impose consecutive terms of imprisonment on the two counts, and the sentence could include both a term of imprisonment and a term of probation. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply here. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the

Section 3553(a) factors weigh in favor of 14 days' imprisonment, 36 months' probation, 60 hours of community service, and $500 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing O'Brien's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like O'Brien, the absence of violent or destructive acts is not a mitigating factor. Had O'Brien engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in O'Brien's case is that he advanced up the West Front and into the Capitol despite having maximal knowledge that the riot was violent, that the police were under assault, and that he was not allowed into the Capitol under any circumstances. From his vantage point on the media tower during some of the most fraught moments on January 6, O'Brien could see full well that each additional person contributing to the riot further endangered the police, who were desperately trying to prevent the rioters from taking the Capitol. Despite seeing this, O'Brien nevertheless chose to join the rioters in storming the building.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 14 days' imprisonment and 36 months' probation in this matter.

### B.  O'Brien's History and Characteristics

O'Brien was arrested and charged with burglary in 2007 (when he was 18 years old), and the charge was ultimately dismissed. O'Brien was also charged with a "Criminal Mischief" misdemeanor offense in 2022, which was dismissed later that same year. The Government is not aware of any other criminal history of O'Brien. [3]

To O'Brien's credit, he agreed to a pre-charge resolution of this matter. He accepted responsibility for his conduct and he spared the government from, among other things, the need to arrest him and conduct removal and initial proceedings in the federal courts.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this

---

[3] The Court has ordered a Presentence Report before the plea and sentencing hearing scheduled for June 11, 2024. The Government understands that defense counsel has arranged for O'Brien to interview with Probation. As of this filing, the Government has not received the Presentence Report.

defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol: "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37). Moreover, general deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

A lengthy period of probation here, together with a period of imprisonment, is also warranted to provide specific deterrence. O'Brien's prior experience with the criminal justice system did not deter him from participating in criminal conduct on January 6. Moreover, after January 6, O'Brien's knowledge that he would likely be held accountable for joining the attack on the Capitol did not prevent him from further involvement in the criminal justice system in 2022. Although O'Brien has no criminal convictions, his history of being charged with crimes augurs for a lengthy period of probation.

Further, with the 2024 presidential election approaching, and many loud voices in the media and online continuing to sow discord and distrust, the potential for a repeat of January 6 looms ominously. The Court must sentence O'Brien in a manner sufficient to deter him specifically, and others generally, from going down the road to riot again.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assaults on police officers and other felonies.[4] This Court must sentence O'Brien based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

O'Brien has pleaded guilty to Counts One and Two of the Information, charging him with violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G). These offenses are Class B misdemeanors, 18 U.S.C. § 3559, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), however, including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," do apply.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

Courts have imposed sentences of incarceration and sentences of intermittent confinement as a condition of probation for defendants who, like O'Brien, who pleaded guilty to violations of

---

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

40 U.S.C. §§ 5104(e)(2)(D) and/or (G) following conduct on January 6 that included aggravating factors.

Defendant Tammy Bronsburg, like O'Brien, entered the Capitol after watching rioters climb the scaffolding, hearing tear gas being deployed, and seeing the billows of smoke rise from the Lower West Terrace. Bronsburg also entered and remained in a sensitive area of the Capitol Building, Senate Conference Room S-145, drinking Jack Daniels there with other rioters. She was sentenced to 20 days' imprisonment and 24 months' probation. *See* ECF No. 70, Gov't Sent'g Memorandum, *United States v. Bronsburg*, 21-cr-144 (RBW); Minute Entry (01/05/2023), *United States v. Bronsburg*, 21-cr-144 (RBW).

Defendant Michael Timbrook, among other things, entered the Capitol Building despite having been pepper sprayed by police officers; witnessed assaults against police officers prior to entering the Capitol Building; ignored the directions of police officers to exit the Capitol; helped breach a police line inside the Capitol Building; entered a sensitive area in the Capitol Building, the Office Suite of the Speaker of the House; and repeatedly spread misinformation about the riot and expressed pride in his participation on social media. He was sentenced to 12 months' probation with a condition of 14 days' intermittent confinement. *See* ECF No. 37, Gov't Sent'g Memorandum, *United States v. Timbrook*, 21-cr-361 (TNM); Minute Entry (05/20/2022), *United States v. Timbrook*, 21-cr-361 (TNM).

Defendant Keith Brown convinced his 18-year-old daughter to breach the Capitol Building with him and chanted "stop the steal" while parading inside. Like O'Brien, he pleaded guilty pre-arrest. He was sentenced to 36 months' probation with a condition of 10 days' intermittent confinement and 60 days' home detention and assessed a $2,500 fine. *See* ECF No. 17, Gov't

Sent'g Memorandum, *United States v. Brown*, 23-cr-197 (BAH); Minute Entry (09/15/2023), *United States v. Brown*, 23-cr-197 (BAH).

Defendant Frederick Webb entered and remained in the Capitol for 14 minutes and encouraged others to breach the Capitol Building and attack police. He pleaded guilty pre-arrest but did not show remorse. He was sentenced to 24 months' probation with a condition of 14 days' intermittent confinement. *See* ECF No. 13, Gov't Sent'g Memorandum, *United States v. Webb*, 23-cr-255 (RCL); Minute Entry (12/05/2023), *United States v. Webb*, 23-cr-255 (RCL).

Although the cases of Bronsburg, Timbrook, Webb and Brown each contain aggravating factors that are not present here, such as entry into sensitives rooms of the Capitol Building and celebrating the attack on the Capitol on social media, O'Brien's previous interactions with the criminal justice system, and his decision to enter the Capitol after having contributed to the mayhem of the riot by scaling the media tower, pose aggravating factors of their own, and warrant a comparable sentence that includes 14 days' imprisonment. Accordingly, the government's recommended sentence here would be consistent with similarly situated defendants and would avoid unwarranted sentence disparities.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence

differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA). Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); must identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and must be applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that O'Brien must pay $500 in restitution, which reflects in part the role O'Brien played in the riot on January 6.[5] Plea Agreement at ¶ 10. As the plea agreement reflects, the riot at the United States Capitol had caused approximately $2,923,080 in damages as

---

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

of July 7, 2023, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies. *Id.*

O'Brien's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *Id.*

## VI. Fine

The defendant's convictions for violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G) subject him to a statutory maximum fine of $5,000 on Count One and $5,000 on Count Two. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1). The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

The government understands that the Presentence Report will provide information bearing on O'Brien's ability to pay a fine. The government, as of this filing, has not received the Presentence Report. Accordingly, the government respectfully requests the opportunity to address whether a fine is warranted here at the sentencing hearing scheduled for June 11, 2024.

## VII. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence the defendant Scott Alan O'Brien to 14 days' imprisonment, 36 months' probation, 60 hours of community service and a payment of $500 in restitution. Such a sentence would protect the community, promote respect for the law,

and deter future crime by imposing restrictions on O'Brien's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    s/ Jason M. Manning
JASON M. MANNING
Assistant United States Attorney
NY Bar No. 4578068
1400 New York Ave NW, 11th Floor
Washington, D.C. 20005
(202) 514-6256
jason.manning@usdoj.gov